[Civ. No. 2654. Third Appellate District.—April 25, 1924.]

HENRY GORDON WHITE, Respondent, v. GEORGE F. COVELL, Appellant.

[1] NEGLIGENCE—PLEADING.—In stating a cause of action based upon negligence, the general rule is that it is not necessary for the pleader to use the term "negligence," if the conclusion of negligence can be drawn from the facts stated.

---

1.   See 19 Cal. Jur. 670, 674; 20 R. C. L. 174.

[2] ID.—INJURY TO BOY LEADING HORSES—ACTION FOR DAMAGES—SUFFICIENCY OF COMPLAINT.—In this action for damages for personal injuries suffered by plaintiff, a boy twelve years of age, while attempting to lead certain horses behind an automobile under the direction of defendant, from the facts stated in the complaint as to the age and want of experience of plaintiff in leading and handling horses, and defendant's knowledge thereof, together with the averments that plaintiff was susceptible to the influence of defendant and easily dominated by him, the law raised the duty upon the part of defendant not to place plaintiff, while so under the influence and domination of defendant, in a position which he, defendant, knew to be dangerous, and which plaintiff did not know to be dangerous; and those facts and the further facts pleaded in the complaint showing a violation of that duty excluded any hypothesis other than that of negligence, and hence the complaint, independently of the averments therein as to the nature and character of the horses, stated a cause of action.

[3] ID.—EVIDENCE—FINDINGS—JUDGMENT.—In such action, from the testimony of plaintiff and other witnesses in his behalf, the jury was justified in finding that defendant directed plaintiff to get into the automobile and lead the horses, notwithstanding defendant testified that he did not direct plaintiff to do so, but that it was a brother-in-law of plaintiff (defendant's foreman) who gave such directions; and from defendant's own testimony the jury was justified in drawing the inference that defendant knew that the horses were likely to pull back and jerk the rope in plaintiff's hand and that, if they did so, plaintiff was likely to be injured; and from the testimony of plaintiff's father as to plaintiff's age and want of experience in handling horses, the jury was justified in drawing the inference that plaintiff did not know that it might be dangerous to lead the horses, and that defendant knew, or should have known, that plaintiff was young and inexperienced in handling horses.

[4] ID.—EMPLOYMENT OF PLAINTIFF AT TIME OF INJURY—EVIDENCE—FINDINGS—JURISDICTION.—In such action, notwithstanding defendant's testimony to the effect that at the time of the accident plaintiff was in the employ of defendant and the facts that defendant's foreman, acting under the direction of defendant, prepared an application and sent it into the State Compensation Insurance Fund and also drew a check in favor of plaintiff, which was intended as payment to plaintiff for his services in helping with the horses on the afternoon that he received his injury, which check was not accepted by plaintiff, the jury was

2.  See 19 Cal. Jur. 604; 20 R. C. L. 37.
4.  See 28 R. C. L. 832.

fully justified in concluding that plaintiff was not in the employ of defendant at the time he was injured; and, therefore, the superior court, and not the Industrial Accident Commission, had jurisdiction over the case.

[5] ID.—FACTS ENTITLING PLAINTIFF TO RECOVER—INSTRUCTIONS.— In such action, it was not error to instruct the jury that if they believed from the evidence that defendant told plaintiff to get into the automobile and lead the horses, that plaintiff, at the request of defendant, did get into the automobile and did lead the horses, that plaintiff at that time was twelve years old, that defendant in telling plaintiff to get into the automobile and lead the horses did not act with care and forethought, and that the horses pulled back and resulted in injuring the left hand of plaintiff, and defendant's instructions were the proximate cause of such injury, and plaintiff was not at that time in the employ of defendant and was not himself guilty of negligence directly contributing to his injuries, the verdict should be in favor of plaintiff—the court in other instructions having accurately defined negligence and fully and correctly described the degree and *quantum* of care required of the parties.

[6] ID.—INSTRUCTIONS—REFERENCE TO COMPLAINT.—In such action, the complaint having stated facts sufficient to charge the plaintiff with negligence, although the term "negligence" was not used therein, the court properly instructed the jury that if they believed from the evidence that plaintiff was not in the employ of defendant and that defendant was "negligent in the manner complained of in the complaint," that plaintiff was injured and the proximate cause of such injury was the "negligence of the defendant specified in the complaint," and that plaintiff was not guilty of negligence directly contributing to his injuries, and there were paid in his behalf for which he was responsible certain hospital charges and he was indebted for medical attention, plaintiff was entitled to recover from defendant the amount thereof in addition to general damages.

[7] ID.—EMPLOYMENT OF PLAINTIFF—EVIDENCE—INSTRUCTIONS.—In such action, although plaintiff and his witnesses testified that it was not defendant's foreman, but defendant, who directed plaintiff with respect to leading the horses, defendant having alleged in his answer and testified at the trial that he did not instruct plaintiff with regard to leading the horses, but that it was his ranch foreman who did so, the trial court, at the request of plaintiff, properly gave an instruction predicated upon the rule of law that "an employer is liable for the

5.  See 2 Cal. Jur. 1026; 14 R. C. L. 817.

6.  See 19 Cal. Jur. 753.

7.  See 16 Cal. Jur. 1090; 18 R. C. L. 775.

results of the negligence of his employee, if the acts of negligence are committed by the employee while acting in the scope of his employment for his employer."

(1) 29 Cyc., p. 570. (2) 29 Cyc., p. 570. (3) 29 Cyc., p. 621. (4) 26 Cyc., p. 1442. (5) 29 Cyc., p. 645. (6) 29 Cyc., pp. 569, 645. (7) 26 Cyc., p. 1579.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge. Affirmed.

The facts are stated in the opinion of the court.

L. J. Maddux for Appellant.

Hawkins & Hawkins for Respondent.

YOUNG, J., *pro tem.*—In this action instituted by plaintiff to recover damages for personal injuries, a verdict was returned in his favor against defendant for five thousand dollars. Judgment followed, and defendant appeals.

The first point urged by defendant for a reversal of the judgment is "that the complaint does not allege any negligence on the part of the defendant."

It is averred in the complaint that plaintiff "was, by reason of his tender years, susceptible to the influence of the said George F. Covell, and easily dominated by him, and was by reason of his tender years not able to comprehend the danger hereinafter specified and set out.

"That on the said twenty-seventh day of August, 1920, in the county of San Joaquin, state of California, the defendant directed said Henry Gordon White to get into an automobile and to lead six horses of defendant. That said horses of defendant had, up to that moment, been in pasture, and one of said horses was four years old and had been broken in the spring of 1920, and was wild; that another of said horses was a spirited horse, wild and what is commonly known as a 'kicker.' That all of said horses by reason of having been out on pasture were frisky and full of spirit, that by reason of said horses being frisky and full of spirit they were likely to object to being led and were likely to pull back; and defendant knew that said

horses were frisky and full of spirit and that one of said
horses was wild and commonly known to be a kicker, and
that one of said horses was only four years old and had
been broken in the spring of 1920, and knew that, by reason
of these facts that said horses were likely to pull back and
would pull back, and would object to being led, and knew
it to be a fact that if said horses would pull back, if a
person was leading them, the lead rope would be jerked
in the hands of the person leading said horses, and would
injure and harm the person leading said horses. That pre-
paratory to leading the horses defendant caused one of said
horses to be harnessed, and the other five horses to have
halter chains placed in their halters and had halter chains
attached to the harness of the harnessed horse. That de-
fendant caused a rope to be attached to the halter of the
harnessed horse for the purpose of leading said harnessed
horse, and on said date, defendant, well knowing said horses
were likely to pull back upon being led and well knowing
that it was dangerous to lead said horses and if they would
pull back the leader of said horses would in all probability
be injured, directed the said Henry Gordon White to get
into said automobile and to lead said horses. That the
servant of said defendant was in said automobile and he
was directed to run and operate said automobile, and said
automobile was under the sole charge and control of de-
fendant. That when said defendant directed said Henry
Gordon White to get into said automobile and lead said
horses, said Henry Gordon White did get into said automo-
bile and took hold of said lead rope attached to the halter
of said harnessed horse and wrapped it around a projection
of said automobile, but the defendant commanded and di-
rected that said Henry Gordon White unwrap said rope
from said projection and to lead said horses directly by
said rope. That the said Henry Gordon White complied
with said demand of defendant and the servant of defend-
ant, under the direction of defendant, started said automo-
bile, and defendant caused said horses to follow behind said
automobile. That while said horses were being so led by the
said Henry Gordon White behind said automobile, and
while he had the said rope in his hand as demanded and
requested by the defendant aforesaid, said horses pulled
back and jerked the rope by which the said Henry Gordon

White was leading said harnessed horse and by reason of said jerk the rope was pulled in the hand of Henry Gordon White and his hand was pulled against the side of said automobile and the fingers of plaintiff's left hand were cut off by said rope and by reason thereof plaintiff's left hand has been permanently injured to his damage in the sum of Fifty Thousand Dollars.

"That at the time the said defendant directed the said Henry Gordon White to get into his said automobile the said Henry Gordon White was a minor and was of the age of twelve years, and was by reason of his tender age unfamiliar with leading horses or the habits of said horses and was ignorant of the fact that said horses might pull back and might jerk the rope in his hands and might injure him, and the said defendant well knew that the said Henry Gordon White was of the age of twelve years, and was inexperienced and did not know that he was likely to be injured and hurt if said horses did pull back."

A general demurrer to the complaint was overruled by the trial court. Defendant does not complain of this ruling, but his contention is that the only allegations in the complaint which state facts sufficient to constitute a cause of action are those in reference to the nature and character of the horses, and that those allegations are not. supported by any evidence, and should, therefore, be eliminated from the complaint in considering its sufficiency to support the verdict and judgment, and that if they are eliminated the remaining allegations, which, if supported by the evidence, do not state sufficient facts to constitute a cause of action, for the reason that the acts of the defendant therein complained of are not charged to have been negligently done, and are not such facts as constitute negligence unless negligently done, and, therefore, do not furnish sufficient complaint upon which to base the verdict and judgment.

There is evidence which tends to establish the averments as to the nature and character of the horses, but there is no direct evidence showing that the plaintiff received his injuries as a result of anything that the horses did in consequence of their peculiar nature or character, and, therefore, in testing the sufficiency of the complaint as a basis upon which to rest the verdict and judgment, it may be conceded that these averments should be eliminated.

66 Cal. App.—47

[1] In stating a cause of action based upon negligence, the general rule is that it is not necessary for the pleader to use the term "negligence," if the conclusion of negligence can be drawn from the facts stated. (*Silveira* v. *Iverson,* 125 Cal. 266 [57 Pac. 996]; *South* v. *County of San Benito,* 40 Cal. App. 13 [180 Pac. 354].)

In the case of *Silveira* v. *Iverson* it is held that "in cases where the facts stated do not constitute a cause of action unless done negligently, it must be averred that they were so done, unless the facts themselves necessarily exclude any hypothesis other than that of negligence." To the same effect is the opinion of the court in *South* v. *County of San Benito, supra.*

Defendant cites these cases as authority to support his contention that the complaint here under consideration does not state a cause of action. He argues that the facts stated are not such facts as constitute a cause of action unless done negligently, and further that the facts themselves, as stated, do not necessarily exclude every hypothesis other than that of negligence, and, therefore, the complaint is bad for the reason that the facts stated are not alleged to have been negligently done.

[2] From the facts stated in the complaint as to the age and want of experience of plaintiff in leading and handling horses, and defendant's knowledge thereof, together with the averments that plaintiff was susceptible to the influence of defendant and easily dominated by him, the law raises the duty on the part of defendant not to place plaintiff, while so under the influence and domination of defendant, in a position which he, defendant, knew to be dangerous, and which the plaintiff did not know to be dangerous. A violation of that duty is shown by the further averments in the complaint that defendant directed the plaintiff to get into the automobile and lead the horses, and that he knew that it was dangerous for plaintiff to lead the horses, and knew that the horses were likely to pull back and jerk the rope in plaintiff's hand, and knew that if they did pull back and so jerk the rope that plaintiff was likely to be injured thereby. These averments, followed by the further allegations that plaintiff did get into the automobile to lead the horses, and that as a result thereof the plaintiff sustained injury, bring to the complaint all the elements essential to

the statement of a cause of action. (See 29 Cyc. 419, 569.)
And such facts themselves, as stated, necessarily exclude any
hypothesis other than that of negligence, and hence the com-
plaint, independent of the averments as to the nature and
character of the horses, states a cause of action.

[3] The second point raised by defendant is "that the
verdict and judgment is against the evidence." Defendant
testified that he did not direct the plaintiff to get into the
automobile and lead the horses, but that it was Cowan, the
brother-in-law of plaintiff, who directed him to do so. The
plaintiff, Cowan and Mrs. Cowan all testified that defendant
directed the plaintiff to get into the automobile and lead the
horses, six in number. They further testified that defend-
ant placed the lead rope in plaintiff's hand and directed him
to keep the coil of the rope on the running-board of the
car, and that he told plaintiff that he might get his feet
tangled in the rope if the coil was kept in the car, and
further that he remonstrated with plaintiff when plaintiff
was endeavoring to fasten the rope on an iron projection
on the side of the automobile, and told him that to do so
might pull the top off. Indeed, the defendant himself tes-
tified that plaintiff started to tie the rope around the bow
of the top, "and I told him if he done that he would pull
the top off." The evidence shows that plaintiff received
his injury August 27, 1920. Plaintiff's father testified that
the plaintiff was born October 20, 1907, and that he had
never harnessed or led any horses. Plaintiff also testified
that he had never led or handled horses in any way. De-
fendant testified that he was fifty-six years old, and that he
had been doing ranch work practically all of his life, and
worked horses and led horses ever since he was a boy.

From the testimony of plaintiff, Cowan and Mrs. Cowan,
the jury were justified in finding that defendant directed
plaintiff to get into the automobile and lead the horses.
From defendant's own testimony, they were justified in
drawing the inference that defendant knew that the horses
were likely to pull back and jerk the rope in plaintiff's
hand, and that if they did so plaintiff was likely to be
injured. From the testimony of plaintiff's father as to
plaintiff's age and want of experience in handling horses,
the jury were justified in drawing the inference that plain-
tiff did not know that it might be dangerous to lead the

horses. They were also justified in drawing the inference from this testimony that defendant knew, or should have known, that plaintiff was young and inexperienced in handling horses.

It is not disputed that plaintiff was injured in the manner alleged. It, therefore, appears that the evidence supports the verdict and judgment.

[4] The third point contended for by defendant is that the court had no jurisdiction of the case for the reason that if there was any relationship between plaintiff and defendant it was that of employee and employer, and the defendant was insured with the State Compensation Insurance Fund for all damages to all employees, and that the Industrial Accident Commission of California had exclusive jurisdiction over the case, and that the superior court of the county of Stanislaus was without jurisdiction.

The evidence shows that defendant was insured as claimed by him, and that his insurance was in full force and effect at the time of plaintiff's injury. It appears from the evidence, without conflict, that Mark Cowan, plaintiff's brother-in-law, was defendant's foreman on his ranch, and that he had authority to hire laborers on the ranch, and to draw checks in payment for labor. That at the time plaintiff was injured he was visiting his sister on defendant's ranch, and had been there for a couple of days. Defendant, who resides in Modesto, came to the ranch in the afternoon of that day and directed Cowan, his foreman, to go with him to a ranch known as the Swan Ranch, some six miles distant, to bring his ranch horses from pasture. Defendant testified that when he directed Cowan to make preparations to go for the horses that he heard Cowan call to plaintiff, but that he did not hear what was said between them. The testimony of plaintiff and Cowan was to the effect that while preparations were being made to go for the horses, that plaintiff said to Cowan when he saw a saddle brought out, ''I can ride a horse better than you. I will go along and ride the horse.'' Cowan testified that he did not hire plaintiff to help with the horses, and did not ask him to go to help with the horses. Plaintiff testified that before going for the horses he asked his sister if she thought he would be paid for helping with the horses, and she told him he would

not, and that he said he would go along anyway and ride the horse.

Plaintiff was asked by defendant's counsel if he had not told one W. J. O'Connor at defendant's house in a conversation about his injury, that before he went for the horses that he had asked his sister, Mrs. Cowan, if he would be paid for going, and that she had told him that he would be paid. Plaintiff denied that he had so stated. O'Connor was not produced to contradict him. The defendant, however, testified that he had heard the conversation, and that plaintiff had told O'Connor that he went into the house and asked his sister if he would get paid for going on this trip for the horses, and she said "Sure."

It appears from the evidence that Mark Cowan, as defendant's foreman, prepared an application and sent it into the State Compensation Insurance Fund in an effort to recover compensation for plaintiff's injuries. Plaintiff, however, had no part in this. Cowan testified that he filled out the blank application in obedience to the order and instructions of defendant, and he further testified that defendant first made out a blank in pencil, and directed him to copy the same, which he did.

It also appears that on September 23, 1920, nearly a month after plaintiff was injured, that Mark Cowan, as defendant's foreman, drew a check in favor of plaintiff for two dollars, intended as payment to plaintiff for his services in helping with the horses on the afternoon that he received his injury. Cowan testified that he did this because defendant insisted on his doing so. In his own language, he stated, "Mr. Covell kept after me until I finally made it out. I didn't want to do it at the time, but I didn't want to leave the ranch at the present time. He kept saying, 'I ought to pay the boy for the half day's work.'" This check was mailed to plaintiff by defendant, but was not accepted by him. We think the jury was fully justified in concluding, as indicated by the verdict, that plaintiff was not in the employ of defendant at the time he was injured.

[5] In the court's instructions to the jury, instruction 4, given at the request of plaintiff, was as follows:

"If you believe from the evidence in this case that the defendant in substance told Henry Gordon White to get

into the automobile in which Henry Gordon White was riding at the time of the accident, and told said Henry Gordon White to lead the horses and that the said Henry Gordon White, at the request of said defendant did get into the automobile and did lead said horses; that said Henry Gordon White at that time was twelve years old; that said defendant in telling said Henry Gordon White to get into said automobile and lead said horses did not act with care and forethought; and that the horses pulled back and resulted in injuring the left hand of Henry Gordon White; and defendant's instructions were the proximate cause of such injury, and Henry Gordon White was not at that time in the employ of defendant, and was not himself guilty of negligence directly contributing to his injuries as in these instructions more particularly explained to you, then I charge you your verdict should be in favor of the plaintiff for such sum as from the evidence you find he is entitled, not to exceed the amount prayed for in the complaint for general damages, to-wit: $50,000.''

Defendant urges that this instruction leaves out the element of negligence, and that it was error to instruct the jury that the state of facts suggested therein entitled the plaintiff to damages for the reason that such facts and acts were not alleged to have been negligently done by defendant. We perceive this to be a proper instruction. The jury were thereby instructed that if they believed defendant did the acts there specified which resulted in injury to plaintiff, and if they further believed that the defendant did not act with ''care and forethought'' in the doing of those acts, that plaintiff should recover, was tantamount to an instruction that if they believed that defendant negligently did the act specified, and that as a result the plaintiff suffered the injury complained of, that he was entitled to recover. Negligence had been defined to the jury as follows:

''Negligence, as the term is used in the law, is a recognized ground of legal liability. Every person in the conduct of his affairs is under a legal duty to act with care and forethought, and if injury results to another from his failure so to do, he may be held accountable in an action at law.''

The word ''negligence,'' as used when stating a cause of action, is merely a term employed to express the elements of

which it is composed, and if the very elements themselves which compose negligence are employed by the pleader, instead of the term "negligence," the statement of the cause of action is not impaired thereby, for the reason that the elements themselves which furnish the very foundation of the action can have no less force and significance than the word "negligence," which is a term permissive under the law, to express the equivalent of those elements.

[6] Defendant complains of the following instruction given at the request of plaintiff:

"If you believe from the evidence in this case that Henry Gordon White was not in the employ of defendant and that defendant was negligent in the manner complained of in the complaint, and that plaintiff was injured and the proximate cause of such injury was the negligence of the defendant specified in the complaint and that plaintiff was not guilty of negligence directly contributing to his injuries as in these instructions more particularly explained to you, and there was paid in his behalf for which he is responsible, $56.85 hospital charges and he is indebted $50 for medical attention, then I charge you that you should find that plaintiff is entitled to recover from defendant said sums in addition to the general damages, if any, you find he is entitled to recover from defendant."

Defendant urges that this instruction was predicated upon negligence alleged in the complaint, and was misleading to the jury for the reason that there was no negligence alleged in the complaint. Since we have concluded that the facts as stated in the complaint are sufficient to charge the defendant with negligence, our observations with respect to the allegations of the complaint dispose of defendant's contention as to this instruction.

[7] Defendant also complains of the following instruction given at the request of plaintiff:

"An employer is liable for the results of the negligence of his employee, if the acts of negligence are committed by the employee while acting in the scope of his employment for his employer. And if you believe from the evidence that Henry Gordon White, at the time of the accident, was not an employee of defendant and that he led the horses at the command and direction of Mark Cowan, and that Mark Cowan was the manager of the ranch of the defendant

and was acting at that time within the scope of his employment and the said Henry Gordon White at that time was twelve years old, and that the said Mark Cowan in commanding or directing the said Henry Gordon White to get into the automobile and lead said horses did not act with care and forethought, that the horses pulled back and resulted in injuring the left hand of Henry Gordon White and that said plaintiff was not guilty of negligence which directly contributed to his injuries as in these instructions more particularly explained to you, and Mark Cowan's instructions were the proximate cause of the injury, then I charge you that if you find that Mark Cowan did so instruct Henry Gordon White to get into said automobile and lead said horses, and was thereby negligent, then the defendant is responsible and the plaintiff is entitled to damages in such a sum as from the evidence you find he is entitled, not to exceed the amount prayed for in the complaint for general damages, to-wit: $50,000.00.''

Defendant does not question the correctness of this instruction in stating the law as to an employer's liability for the negligence committed by his employee in the course of his employment, but he urges that this instruction is contrary to the theory and testimony of plaintiff, inasmuch as plaintiff and his witnesses testified that it was not Cowan who directed plaintiff with respect to leading the horses. It is true that plaintiff and his witnesses did so testify, but it is also true that defendant alleged in his answer, and testified at the trial that he did not instruct plaintiff with regard to leading the horses, but that it was Cowan who did so, therefore an issue was made by defendant's pleading and his testimony as to whether it was he or Cowan who directed the plaintiff to lead the horses. It was proper for the court to instruct the jury as to the law applicable to defendant's liability for the negligence of his employee, so that if the jury believed the testimony of the defendant, they would be properly advised as to the law applicable to the facts, in the event that they also believed that Cowan, in giving such directions to plaintiff, was acting within the scope of his employment.

We are of the opinion that the judgment should be affirmed, and it is so ordered.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 23, 1924, and the following opinion then rendered thereon:

THE COURT.—The application for transfer and hearing by this court after decision by the district court of appeal is denied. In addition to the instructions quoted in the opinion of that court, defining negligence as a failure "to act with care and forethought," other instructions were given in which negligence was accurately defined, and the degree and quantum of care required of the parties were fully and correctly described. Read in the light of these other instructions the definition contained in the quoted instructions cannot be said to be either incorrect or misleading.