[Civ. No. 5897. First Appellate District, Division One.—February 21, 1929.]

ROBERT LINDBERG, etc., Respondent, v. ANTONIO PANTOLEON et al., Appellants.

Goldman, Nye & Spicer for Appellants.

Anthony Devoto ánd Devoto & Richardson for Respondent.

WARD, J., *pro tem.*—In this action instituted by plaintiff, guardian *ad litem* of Robert Lindberg, a minor, to recover damages for personal injuries, a verdict was returned in his favor against defendants for $500. Judgment followed, and defendants appealed. The defendants were engaged in the retail grocery business, and in connection therewith operated a delivery truck. On the morning of October 6, 1923, defendant Antonio Pantoleon drove out in the truck to solicit business. In front of the residence of one of his customers he parked the car with its back facing the sidewalk, and started to walk toward the home of the prospective customer. The evidence is somewhat conflicting and uncertain as to whether Pantoleon had reached the house or was leaving it when the cry of "Tony!" attracted his attention and he hurried to the front of the truck and there saw Robert Lindberg, seemingly in pain, in front of the truck. The boy had broken his forearm in attempting to crank the automobile.

■ Appellants' first contention is that the judgment is not supported by the evidence, and claim that Antonio Pantoleon did not request Robert Lindberg to crank the car. The testimony does not show that an express request was made just prior to the accident, but that Antonio Pantoleon did make such a request on the morning of the accident. At the time of the injury Robert Lindberg was ten years of age, and inexperienced in the operation of an automobile. He had cranked the machine some forty times prior to this date, either upon the request of or with the assent of defendant. From defendant's own testimony the jury were justified in drawing an inference that defendant Antonio Pantoleon knew that the starting crank of the automobile was likely to kick or strike back, and that a young boy was likely to be injured when turning it. Appellants' argument goes to the weight of the evidence and plaintiff's credibility as a witness rather than to the sufficiency of the evidence to support the verdict. When there is a conflict in the evidence upon the issues the finding of the jury is conclusive on appeal. (See *Turano* v. *Bailey*, 86 Cal. App. 402 [260 Pac. 841].) The jury resolved this con-

flict in favor of plaintiff, finding in effect by their verdict that the boy had repeatedly cranked the machine at the request of defendant, express or implied; that it had become a custom between them for the boy so to do; that the defendant Antonio Pantoleon knew the danger of cranking the machine, because he himself a year and a half before had suffered the same injury in a similar operation. It was not necessary for the jury to consider whether or not this machine had a self-starter, or whether the self-starter was working on that day, if, as a matter of fact, it was being cranked on that day by the crank and not by the self-starter.

Objection has been made that no express direction was given by Antonio Pantoleon to the boy to crank the machine. A direction need not be expressed to be a direction. It may be determined from circumstantial evidence or from the circumstances surrounding the relation of the parties. To determine whether or not there existed an implied instruction so to do, it was proper for the court to admit evidence showing that the cranking of the machine upon its numerous startings was so common an occurrence, and done so often at express request and with the implied consent and approbation of the man, that the boy was entitled to consider that he had an implied instruction so to do.

At the beginning of the trial defendants moved for judgment on the pleadings on the ground that the complaint did not state a cause of action against defendants or either of them. Paragraph VI of the amended complaint reads as follows: "That at all the times herein mentioned, the starting crank of the motor of said defendants' automobile was accustomed to kick or strike back when one attempted to crank the motor of same; that at all the times herein mentioned, and particularly at the time said plaintiff received the injuries herein mentioned, said defendants and each of them knew that said starting crank of said motor of said machine was accustomed to kick or strike back when one attempted to crank said motor of said machine; that at all the times herein mentioned, and particularly prior to and at the time of receiving the injuries herein mentioned, said plaintiff, Robert Lindberg, did not know that said starting crank of said

motor of said machine was accustomed to kick or strike back when one attempted to crank the same; that prior to the time of receiving said injuries herein mentioned, said plaintiff, Robert Lindberg, was requested by said defendants to start said crank of said motor, and neither at the time of said request nor at any other time did said defendants or either of them warn said plaintiff, Robert Lindberg, that said starting crank of said motor was accustomed to kick or strike back when one attempted to crank said motor; that at the time and place herein mentioned, when said plaintiff, Robert Lindberg, attempted to crank said motor of said automobile in accordance with the request of said defendants, as aforesaid, and without any fault or negligence on his part, said starting crank kicked or struck back causing the injuries herein complained of; that said injuries received by said plaintiff, Robert Lindberg, at the time and place herein mentioned, were proximately caused by and resulted from the kicking or striking back of said starting crank of said motor as said plaintiff, Robert Lindberg, attempted to crank said motor of said automobile in accordance with the request of said defendants at the time and place aforesaid.''

The paragraph last quoted states facts showing the duty of defendants and a neglect of that duty. A conclusion of negligence can be drawn from the facts stated. There is no suggestion from any of the pleadings that any act on the part of plaintiff was wilful or mischievous and nothing to indicate that any conclusion could be reached other than that of negligence. ■ When the complaint, as in this case, alleges a series of facts and circumstances establishing the cause of injury from which an inference must be drawn that a defendant was negligent it is not necessary to use the term negligence in the complaint. (*Silveira* v. *Iverson,* 125 Cal. 266 [57 Pac. 996]; *White* v. *Covell,* 66 Cal. App. 732 [227 Pac. 196].) In answering paragraph VI defendants set forth in part as follows: '' . . . deny that there was any fault or negligence on the part of defendants or either of them.'' ■ In any case wherein a defendant treats the issue as one of negligence he cannot prevail upon a motion for judgment upon the pleadings. (*Nittler* v. *Continental Casualty Co.,* 94 Cal. App. 498 [272 Pac. 309]; *National Union Co.* v. *Nason,* 21 Cal. App. 297

[131 Pac. 755]; *Carroll* v. *Briggs,* 138 Cal. 452 [71 Pac. 501]; *Slaughter* v. *Goldberg, Bowen & Co.,* 26 Cal. App. 318 [147 Pac. 90].)

That the court erred in denying defendants' motion for nonsuit is appellants' next contention, and such motion was based upon the following grounds: 1. The matter was within the exclusive jurisdiction of the Industrial Accident Commission. Hence, the court was without jurisdiction to try the case; 2. Plaintiff failed to prove the material allegations of his complaint; 3. Plaintiff failed to prove that the accident was caused by the negligence of the defendants, or any of them.

At the outset we call attention to the reporter's transcript of testimony on page 16, which reads in part as follows: "A. Well, what am I going to answer? I remember one day I got stuck, it was kind of a rainy day, he was outside his place, he said, 'I will help you, Tony,' and I was good nature and I gave two bits. Q. Was that the only time? A. Another time some lady sent him down to get some meat and I give fifteen cents more. I never asked the fellow to work for me. Q. Is that the only time? A. Yes. Q. Are you sure that Mr. Lindberg did not help you in delivering packages to your customers more than twice? A. He never delivered more than twice." There can be no doubt that Antonio Pantoleon definitely stated that the Lindberg boy had worked for him but twice, and that he had given him a small sum of money. On appeal counsel for appellants call our attention to testimony of the plaintiff and other witnesses who testified that the boy had worked upon many other occasions, and upon this testimony he claims that the trial court erred in denying the motion made upon the ground that the Industrial Accident Commission had exclusive jurisdiction of this case. ■ Our first answer must be that if a litigant adopts a certain position on any material issue and himself gives evidence in support of that position he cannot upon appeal seek to reverse the judgment by contradicting his own testimony and obtain a benefit from the evidence which he impugned. ■ However, under the provisions of the Workmen's Compensation Act (Stats. 1913, p. 279), Lindberg was not an employee. Counsel cites *McLain* v. *Llewellyn Iron Works,* 56 Cal. App. 60 [204 Pac. 869]. The case is not in point.

In that case there was no doubt that the deceased was "actually employed." The suit was instituted by the mother, and the sole question involved was the sufficiency of the complaint in an action instituted in the superior court and the court on appeal held that "where the condition of compensation prescribed by subdivisions 1, 2, and 3 of section 12 of the act (Stats. 1915, p. 1079), are, as in the instant case, shown to exist, no cause of action is stated by a complaint, in the absence of allegations showing the employment to have been within the excepted classes of labor mentioned in section 14 of the act (Stats. 1915, p. 913), and that in the absence of such showing we cannot presume the existence of such facts in support of the judgment."

The question here to determine is: Was there an employment? Irrespective of whether Robert Lindberg worked two or sixty days, he was not paid a regular salary; he received small sums of money whenever Pantoleon was in the mood to recompense him for making deliveries. There was no fixed duration of the period of work or the time of payment, and no agreement that Pantoleon could direct the details of the work. The boy worked during vacation and occasionally after school, and was not required to perform services if he was not so disposed. ■ If one party does not intend to give regular employment and the other to accept regular employment no contract of employment exists, and whatever work is performed becomes irregular, occasional, or merely incidental as distinguished from regular and continuous. (See *Diamond Livery* v. *Industrial Acc. Com. et al.*, 289 Ill. 591 [124 N. E. 609], and cases cited.) That Antonio Pantoleon did not have dominion over the boy's time, as a master over a servant, is best shown when upon an occasion the boy's mother, in the presence of Antonio Pantoleon, ordered the boy home for his lunch; the boy obeyed and Antonio Pantoleon recognized the dominion of another by concurring therein. Counsel for appellants, in his zeal in behalf of his clients, has taken us back over 2,000 years to the doings of the early Greeks at Athens. We would be content to go back only as far as the memory of every man now existent in these United States. Ever since wheels have been an integral part of vehicles in this country and elsewhere, every active member of boydom has earnestly desired to be in that vehicle and allowed to ride

thereon. If not with permission he has contrived to steal rides, or he has wheedled his way into being invited by running his legs off on side errands to save the driver exertion; he has carried things uphill when the vehicle could not easily go, in order that he might ride downhill or on the level. He has been alert to open gates to permit a passage through and sometimes to close them afterward. The dimes or quarters are, of course, an incentive, but the principal remuneration is the pleasure of transportation. Such an arrangement cannot be dignified by the term "employment" as that word is used in the Workmen's Compensation Act.

On the motion for nonsuit defendants also pressed the point that the material allegations of the complaint had not been proven, laying stress upon the claim that plaintiff failed to prove that the accident was caused by defendant's negligence. In answering the first point made by appellants, namely, that the judgment is not supported by the evidence, we confined ourselves to a discussion of such evidence presented prior to the time that plaintiff rested. It is, therefore, unnecessary to consider this point further.

██ Appellants contend that the court erred in giving plaintiff's proposed instruction number two. This proposed instruction reads: "If you are satisfied from the evidence that the plaintiff has established the material allegations of his amended complaint by a preponderance of the evidence, I instruct you that the plaintiff is entitled to recover such damages as you believe from all the evidence of the case he is entitled to." As a general rule, this instruction leaves to the jury the duty to determine the material allegations of the complaint. In view of the sixth paragraph of plaintiff's complaint it was necessary that the jury find for the plaintiff upon such allegations. In conjunction with the other instructions, the jury was fully, clearly, and carefully instructed on the law, and could not possibly have been misled. Elsewhere the court covered paragraphs IV and VI and a miscarriage of justice has not resulted therefrom. (*Hoffman* v. *Pacific Electric Co.*, 45 Cal. App. 751 [188 Pac. 597].) The instruction complained of did not permit the jury to disregard the real issues if they considered them immaterial as each material allegation of paragraph VI was incorporated into a separate instruction.

Those instructions of the defendants which were refused were either covered by the instructions given, or they were instructions upon questions of law, and it is not the province of the jury to determine such, but of the court. The trial judge was eminently fair in his rulings upon evidence, and this court cannot perceive how substantial justice has been denied defendants.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.